No. 10,118.

Scott *v*. Gregory.

Decided April, 3, 1922. Rehearing denied May 1, 1922.

Action in debt, and for subrogation. Judgment for plaintiff.

*Affirmed.*

1. Fraud—*Real Property*. Record reviewed and the transaction, concerning real property, held fraudulent and collusive on the part of defendants, and the decree entered in favor of plaintiff upheld.

2. Subrogation—*Doctrine*. The doctrine of subrogation is one of equity and benevolence, and its object is the prevention of injustice.

The doctrine held applicable to the case under consideration.

*Error to the District Court of Yuma County, Hon. L. C. Stephenson, Judge.*

Mr. John T. Bottom, for plaintiff in error.

Messrs. Allen & Webster, for defendant in error.

*En banc.*

Mr. Justice Bailey delivered the opinion of the court.

Suit was by James W. Gregory, defendant in error, against Minnie K. Scott and others, to recover $1,377.10

from certain of the defendants, and for subrogation to the rights of Lincoln R. Scott, as mortgagee, under two second mortgages on real estate in Yuma County. Findings and decree were for Gregory according to the prayer of his complaint. Minnie K. Scott brings error.

It appears that in 1913, John C. Kness, one of the defendants, was indebted to Lincoln R. Scott in the sum of $1,200.00, which was secured by chattel mortgage. Kness at that time owned the northwest quarter of section 23, township 5, south, range 47 west, in Yuma County. His wife, Jeanette E. Kness, another of the defendants, owned the southwest quarter of section 24, same township and range. Gregory purchased from Kness the land in section 23.

To secure Scott in his loan to Kness the latter with his wife executed two notes to Scott for $600.00 each. Gregory and his wife signed these notes as sureties. A single mortgage securing the payment of the notes was executed jointly, on the two quarters of land above described, by the makers of the notes. The land conveyed by Gregory was incumbered by a first mortgage, amounting, as Gregory then supposed, to about $1,000.00 The other quarter, belonging to Mrs. Kness, for about $500.00.

The notes were what are known as judgment notes and on February 3, 1916, Scott took judgment without notice, against all the makers. Gregory did not learn of this until about a year later, when he was about to dispose of some of his property and found that a transcript of said judgment had been duly recorded. He had in the meantime also ascertained that the amount of the first mortgage on the quarter which he had bought of Kness, including interest and taxes, amounted to approximately $1,500.00, instead of $1,000.00, and he conveyed the same back as of no value above incumbrances. Later the land in section 24, owned by Mrs. Kness, was conveyed by her to Minnie K. Scott, wife of the holder of the second mortgage, subject expressly, however, to both the first and second mortgages. For this transfer there was ostensibly a consideration of

$500.00, but in fact the record shows that Mrs. Kness actually realized little or nothing from the transaction.

Gregory then made the further discovery that Scott had obtained permission from the County Court in Denver to withdraw from the files the notes and mortgage upon which he had secured his judgment. Gregory then moved an order requiring the return of these documents so that he could become permanently possessed of them, and so safely pay the judgment. On February 14, 1917, Scott, Gregory and their respective attorneys agreed among themselves that Scott should within three days from that date return all these papers to the files of the court for Gregory's use, protection and security.

It appears that on the very date of this agreement Scott released to his wife the land standing in her name from the lien of the second mortgage. The release was made, as is admitted, for a consideration of $1.00 only. On February 15th, 1917, the attorneys for Gregory secured an abstract of title duly certified to the land covered by such mortgage, which disclosed that on that date the lien was still in full force and effect. Scott failed to keep his agreement for a prompt return of the papers to the court, and did not replace them until February 20, 1917, on which latter date Gregory made payment. On the same day the release to his wife of the second mortgage was recorded by Scott.

This suit was then brought by Gregory for the relief indicated above. The decree was for a personal judgment against Kness, he having admitted the complaint to be true. Lydia Gregory was dismissed from the cause, having no interest. The decree also cancelled the release by Scott of the land conveyed by Jeanette E. Kness to Minnie K. Scott, and directed that all land subject to the mortgage, including the quarter held by Mrs. Scott, be sold to satisfy the judgment Gregory had paid.

The only matter worthy of any consideration is the alleged defense of Mrs. Scott that she took the quitclaim from Mrs. Kness as an innocent party, and knew nothing

of the transactions of her husband with the other parties, and paid him $1.00 for a release of the mortgage as a valid, binding and sufficient consideration. The claim that she took the land in good faith without notice is refuted by the transaction itself. She secured the release from her husband and for the trifling consideration of $1.00. These facts alone are sufficient to cast suspicion upon and condemn the acts of the Scotts. In addition Mrs. Kness testified that Mrs. Scott knew the facts affecting title and of the judgment against Gregory, and that the Scotts had planned to force Gregory to pay the same and then release the Scott quarter from the lien of the second mortgage. That the whole matter of this release is fraudulent and collusive is beyond peradventure. No other conclusion is possible. The trial court could not have reasonably found anything other than that Mrs. Scott had full notice of all the facts and that her land should be held to respond to the just claim of Gregory. It is largely a fact question, anyhow, and these were all very properly resolved by the trial judge adversely to the contentions of Mrs. Scott.

Some technical defenses are raised and argued by plaintiff in error against Gregory's claim to the right of subrogation, but if it is true as was said in *Leavenworth v. Brendel,* 63 Colo. 563, at page 567, 167 Pac. 966, that "The doctrine of subrogation is one of equity and benevolence, and its object is the prevention of injustice," it would be difficult to discover a state of facts which more urgently call for its application than those here involved.

Judgment affirmed.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE BURKE not participating.